UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DAPHNE HOFSCHUTLE,<br><br>Plaintiff,<br><br>v.<br><br>SUN TRUST BANKS INC. AND CITIBANK NMTC CORPORATION,<br><br>Defendants. | CIVIL ACTION NO.<br><br>1:20-cv-01676-WMR |

### [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above-styled matter appears before the Court on the Motion to Dismiss (the "Motion") of Defendant Sun Trust Banks Inc. ("Sun Trust").[1] ECF No. 25. Having considered the briefing and the parties' arguments at the hearing held on September 28, 2020, the Motion is hereby **GRANTED**. The Court makes the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

Plaintiff Daphne Hofschutle ("Plaintiff") makes the following allegations

---

[1] Truist Bank is the successor by merger to SunTrust Bank. Truist Bank was formed on December 7, 2019, by the merger of SunTrust Bank into Branch Banking and Trust Company and Branch Banking and Trust Company's subsequent change of its name to Truist Bank.

that are taken as true for the purposes of the Motion.

1. Plaintiff, a resident of North Pole, Alaska, is the victim of an email scam which caused her to initiate two wire transfers to a fraudster who hacked her email. Compl. at ¶¶ 3, 9, ECF No. 1.

2. Plaintiff's email communication with her investment broker, Ty Schommer, appears to have been hacked in July 2017, during a time when they were engaged in discussions about investment options for Plaintiff. *Id.* at ¶ 9.

3. The hacker, an individual named Leonardo Espinal, intercepted email communications between Plaintiffand and Mr. Schommer, concerning arrangements for wiring investment funds. *Id.* at ¶¶ 3, 9.

4. After intercepting these communications, Espinal created a deposit account with SunTrust in the name of Arbor Capital Management, Inc., the same name as Plaintiff's broker company's name. *Id.* at ¶ 10.

5. Espinal also created a fictitious email account under the name Ty Schommer. *Id.*.

6. Espinal then used the fictitious email account to send emails to Plaintiff to deceive her into thinking that she was continuing communications with her broker and to induce her into making wire transfers to be placed into various investments that she and her broker had discussed previously. *Id.* at ¶¶ 1, 10. Plaintiff alleges

that "[b]oth the fictitious email address and bank account in the name of her broker's company gave Plaintiff the false belief she was communicating with her broker who she has a long-standing relationship with." *Id*. at ¶ 10.

7. The Complaint describes two fraudulent wires at issue, one involving a $200,000 wire on August 2, 2017, to SunTrust as the beneficiary bank, and the other involving a $200,000 wire on August 15, 2017, to CitiBank as the beneficiary bank. *Id*.

8. In relation to the SunTrust wire, on August 2, 2017, Plaintiff initiated a $200,000.00 wire from her bank, Mt. McKinley Bank, to the SunTrust account in the name of Arbor Capital Management, Inc. *Id*. at ¶¶ 1, 11.

9. Plaintiff's actual broker, Ty Schommer, was vacationing during the period of the fraudulent wire transfer and Plaintiff discovered he never requested the wire transfers that she sent on August 29, 2017. *Id*. at ¶ 1, 13.

10. On or about August 30, 2017, twenty-eight days after the wire processed, Plaintiff notified her financial institution, Mt. McKinley Bank, of the fraudulent transaction. *Id.* at ¶1.

11. Mt. McKinley Bank issued a Hold Harmless and Indemnification Agreement to SunTrust requesting refund of the fraudulent and erroneous transfer. *Id*. at ¶ 1.

12. The wire payment had already been processed and funds deposited into the SunTrust account designated by Plaintiff in the wire instructions.[2]

13. Plaintiff contacted the North Pole Police Department and informed them of the fraudulent wire transfers and the FBI has commenced an investigation. *Id*. at ¶¶ 14, 15-20.

## II.    CONCLUSIONS OF LAW

14. Based on the foregoing factual allegations, Plaintiff attempts to allege the following counts against SunTrust: (1) negligence; (2) violation of Article 4A of Georgia's Uniform Commercial Code ("U.C.C."); and (3) violation of the Bank Secrecy Act ("B.S.A."). *Id*. at 5-7.

### A.    Plaintiff's negligence claim is preempted by the U.C.C.

15. The Georgia U.C.C. is a comprehensive set of laws governing commercial transactions. Article 4A of the Georgia U.C.C provides the exclusive means of determining the rights, duties, and liabilities of the parties arising out of wire transfers:

> In the drafting of Article 4A, a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique

---

[2] Plaintiff alleges the same facts with respect to the Citibank wire, namely that she initiated the wire transaction on August 15, 2017, pursuant to the fraudulent email she received, Citibank received the funds and deposited as directed, and on August 29, 2017, Plaintiff learned of the fraud and notified Mt. McKinley Bank. *See* Compl. ¶ 1.

> method of payment to be governed by unique rules that address the particular issues raised by this method of payment. A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability . . . The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

O.C.G.A. § 11-4A-102, Official Comment; *see also Regions Bank v. Provident Bank, Inc.,* 345 F.3d 1267, 1274-75 (11th Cir. 2003) ("Parties whose conflict arises out of a funds transfer should look first and foremost to Article 4A for guidance in bringing and resolving their claims . . . . [4A is] intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties.") (internal citations and quotations omitted).

13. Thus, whatever duties might exist to refuse acceptance or return the wired funds to Plaintiff are governed by the Georgia U.C.C. and are not a matter of common law. *See First Ga. Bank v. Webster*, 168 Ga. App. 307, 308, 308 S.E.2d 579, 581 (1983) (holding that "where the [Georgia U.C.C.] provides a comprehensive remedy for parties to a transaction, a common law action would be barred") (citation omitted).

16.     The statutory scheme established by the Georgia U.C.C. applies to all of the entities involved in the wire transfers at issue, including SunTrust as the entity that accepted the wire transfer and disbursed the funds to the account identified in Plaintiff's instructions. *See, e.g.,* O.C.G.A. § 11-4A-209 ("Acceptance of payment order"); O.C.G.A. § 11-4A-305 ("Liability for late or improper execution or failure to execute payment order"); O.C.G.A. § 11-4A-503 ("Injunction or restraining order with respect to funds transfer"); O.C.G.A. § 11-4A-211 ("Cancellation and amendment of payment order"); O.C.G.A. § 11-4A-210 ("Rejection of payment order"); O.C.G.A. § 11-4A-404 ("Obligation of beneficiary's bank to pay and give notice to beneficiary"); O.C.G.A. § 11-4A-405 ("Payment by beneficiary's bank to beneficiary"); O.C.G.A. § 11-4A-207 ("Misdescription of beneficiary"); O.C.G.A. § 11-4A-208 ("Misdescription of intermediary bank or beneficiary's bank"); O.C.G.A. § 11-4A-205 ("Erroneous payment orders"); O.C.G.A. § 11-4A-303 ("Erroneous execution of payment order").

17.     Under U.C.C. parlance, SunTrust is the beneficiary bank, meaning "the bank identified in a payment order in which an account of the beneficiary is to be credited" pursuant to the wire payment instructions. *See* O.C.G.A. § 11-4A-103(a)(3).

18. Because the Georgia U.C.C. sets forth the duties of SunTrust as the beneficiary bank as well as the available remedies for breach of those duties, this case must be decided within the confines of the Georgia U.C.C. *See Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A.,* No. 18-15014, 2019 U.S. App. LEXIS 35604 (11th Cir. Nov. 27, 2019) (affirming district court's dismissal of common law negligence claim arising out of wire transfer on Article 4A preemption grounds); *Atl. Energy Grp. v. Ne. Direct Corp.*, 53 F. Supp. 3d 810, 814 (D.S.C. 2014) (holding that plaintiff's breach of fiduciary duty claim was preempted by U.C.C. "because the claims arise out of the bank's processing of a funds transfer [and] the claims are governed solely by Article 4A"); *Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1356 (S.D. Fla. 2015) (noting that in cases where customer's negligence claims are predicated upon unauthorized transfers, such as forged signatures or improper authorization, such claims are preempted); *Capten Trading Ltd. v. Santander Int'l*, No. 17-20264-Civ-Scola, 2018 U.S. Dist. LEXIS 54622, at *9-10 (S.D. Fla. Mar. 29, 2018) (negligence claims premised on unauthorized transfers of funds fall within the scope of Article 4A and are preempted because "all [the claims] rest[ed] on [Plaintiff's] allegations that the Bank mishandled unauthorized wire transfer requests").

19. For these reasons, Plaintiff's common negligence claim must be dismissed because it is preempted and displaced by the U.C.C.

**B.   Plaintiff Fails to State a Claim for Negligence**

20. Even if Plaintiff's negligence claim were not preempted by the U.C.C., her allegations nonetheless fail to state a claim against SunTrust under basic negligence principles.

**i.   SunTrust did not owe a duty of care to Plaintiff.**

21. SunTrust's only involvement in this case is as the recipient of the funds that Plaintiff caused to be wired to SunTrust pursuant to instructions that she provided to her bank. Compl. at ¶ 11.

22. Importantly, Plaintiff does not allege that she had any relationship with SunTrust. *See generally* Compl.

23. Instead, Plaintiff alleges that SunTrust was negligent by allowing the account holder to use the account for fraudulent purposes. *Id*. at ¶¶ 22-23.

24. Under the weight of authority in this jurisdiction, SunTrust owed no duty of care to Plaintiff as a non-customer of the bank. *See Midwest Feeders, Inc. v. Regions Bank (Inc.),* No. 1:15-CV-00013 (LJA), 2016 U.S. Dist. LEXIS 135054, *15 (M.D. Ga. Sept. 30, 2016) (dismissing plaintiff's claims for common law negligence and negligent hiring and supervision against bank for failure to state a

8

claim because "a negligence action requires a duty or obligation recognized by law and Plaintiff has identified no duty that Defendant owed to Plaintiff, a non-customer") (internal punctuation and citations omitted).

25. Courts in other jurisdictions have reached the same conclusion that "a bank owes no duty to a non-customer who alleges a common law tort claim." 2016 U.S. Dist. LEXIS 135054, at *15-16. *See, e.g., Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) (a bank owes no duty to a "noncustomer who is defrauded by the bank's customer through use of its services" and finding no duty where noncustomer had "no direct relationship" with the defendant bank) (collecting cases); *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Raczkowski*, 764 F.3d 800, 805-06 (8th Cir. 2014) (bank owed no duty to noncustomer whose employee opened account in its name and fraudulently deposited noncustomer's checks into account); *VIP Mortg. Corp. v. Bank of Am., N.A.*, 769 F. Supp. 2d 20, 27 (D. Mass. 2011) (reiterating "the now almost universal rule that banks do not owe a common law duty of care to third party non-customers"); *Nat'l Grange Mut. Ins. Co. v. Verizon's Benefits Ctr.*, 541 F. Supp. 2d 745, 750-51 (D. Md. 2008) (bank owed no duty to non-customer for allowing bank customer to deposit the plaintiff's guardianship funds into customer's personal accounts). In *Eisenberg,* the court noted that "to extend a duty of care to strangers like [the plaintiff] would be contrary to the normal

understanding of the purpose of a bank account and would expose banks to unlimited liability for unforeseeable frauds." *Id;* 301 F.3d 220 at 226 (citation omitted).

26.     Importantly, courts have even declined to impose a tort duty upon a bank to a non-customer plaintiff even when the non-customer is the person in whose name an account was fraudulently opened. Indeed, "the majority of federal and state courts considering whether a duty is imposed on financial institutions to non-customer victims of identity fraud have found no such duty exists." *Parrish v. Chase Bankcard Servs.*, No. 1:13-CV-01504, 2014 U.S. Dist. LEXIS 191038, *14-15 (N.D. Ga. June 10, 2014) (*citing Promissor, Inc. v. Branch Bank and Tr. Co.*, No. 1:08-CV-1704-BBM, 2008 U.S. Dist. LEXIS 98472, 2008 WL 5549451, *4-5 (N.D. Ga. October 31, 2008) (finding that, under Georgia law, the defendant bank did not owe a duty to a non-customer victim of identity theft)). *See also Nicholl v. Nationsbank of Ga., N.A.*, 227 Ga. App. 287, 488 S.E.2d 751 (1997) (granting summary judgment to bank on negligence claim of plaintiff because evidence did not indicate that any wrongful conduct of bank in opening the account for an imposter who had stolen the plaintiff's identity).

27.     Here, Plaintiff is a complete stranger to the account at issue. In fact, it appears from the pleading that Plaintiff's funds went exactly where she instructed her bank to send them. Compl. at ¶ 1.

28.    Further, there is no allegation that Plaintiff herself was a victim of identity theft.  *See generally* Compl.

29.    Therefore, Plaintiff has failed to allege even the most basic element of a negligence claim against SunTrust – a legal duty that SunTrust owed to her.

### ii.    SunTrust's actions were not the proximate cause of Plaintiff's injuries as a matter of law.

30.    Plaintiff alleges that, "[h]ad Sun Trust satisfied its duty to know its customer – vet a newly created business account – and provide [*sic*] the requisite oversight, the conversion and theft of Plaintiff's funds would not have occurred."  Compl. at ¶ 23.

31.    Plaintiff cannot prevail on a negligence claim against SunTrust because none of SunTrust's alleged actions were the *proximate cause* of Plaintiff's injuries as a matter of law.

32.    As the Georgia Court of Appeals has stated:

> A prior and remote cause [cannot] be made the basis of an action if such remote cause did nothing more than furnish the condition, or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, efficient cause of the injury.  If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause.

11

*Jackson v. Real Prop. Servs. Corp.*, 268 Ga. App. 675, 676-77, 602 S.E.2d 356, 357 (2004) (quoting *Johnson v. Rice*, 211 Ga. App. 687, 688, 440 S.E.2d 81, 82 (1994)) (alteration in original).

33. The cause of Plaintiff's loss is clear: Plaintiff admits that "the fraudulent scheme worked," and that she " made a wire transfer in the amount of $200,000.00 to a fictitious account in the same name of her broker's company, Arbor Capital Management, Inc." Compl. at ¶ 11.

34. SunTrust admittedly had no role in those actions. *See id.*, *passim*.

35. Absent the necessary elements of both duty and proximate causation, it is impossible for Plaintiff to state a claim for negligence against SunTrust.

36. Accordingly, Plaintiff fails to state a negligence claim for lack of the necessary element of causation.

### C. **Plaintiff Cannot Recover from SunTrust Under Article 4A.**

#### i. **Section 11-4A-201 is inapplicable to SunTrust because SunTrust is not the "receiving bank."**

37. In support of her U.C.C. claim, Plaintiff offers a one-sentence allegation that SunTrust failed to "enact and/or follow 'security procedures' as defined under Article 4A-201 and but for this failure, the conversion of Plaintiff's funds was created." Compl. at ¶ 27.

38. Section 11-4A-201 of the Georgia U.C.C., which governs security procedures for wire transfers, provides as follows:

> "Security procedure" means a procedure established by agreement of a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or canceling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication. A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, callback procedures, or similar security devices. Comparison of a signature on a payment order or communication with an authorized specimen signature of the customer is not by itself a security procedure.

O.C.G.A. § 11-4A-201.

39. This section is inapplicable to SunTrust in the instant case because it was not the "receiving bank."

40. Per the definitional sections of Article 4A, a "receiving bank" means "the bank to which the sender's instruction is addressed." *Id*. at § 11-4A-103(a)(4).

41. Thus, based on Plaintiff's own allegations, the "receiving bank" was Mt. McKinley Bank, i.e., Plaintiff's own bank to whom she provided the wiring instructions. *See* Compl. at ¶ 1.

42. Even if Plaintiff were not confused about Article 4A terminology, it is unclear how a security procedure between Plaintiff and Mt. McKinley Bank would have prevented her loss because (1) she admits that she made the payment order, and (2) the money went to the account she designated. *Id.*

43. Thus, the kind of fraud or mistake that Section 4A-201 is intended to prevent is not at issue here.

44. Therefore, Plaintiff fails to state a claim against SunTrust under Section 11-4A-201.

### ii. Plaintiff lacks statutory standing to sue SunTrust.

45. As numerous courts have recognized, Article 4A of the U.C.C. sets forth a carefully crafted scheme, allocating between the parties to a funds transfer the rights and responsibilities of each. *See, e.g., Capten Trading Ltd. v. Banco Santander Int'l*, 2018 U.S. Dist. LEXIS 54622, *8-9 (S.D. Fl. Mar. 29, 2018) ("the rules set forth in Article 4A 'are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article.'") (quoting Fla. Stat. § 670.102 (cmt.)); *Grain Traders v. Citibank, N.A.*, 960 F. Supp. 784, 789 (S.D.N.Y. 1997) ("Article 4-A proceeds to define the rights and duties of each bank involved in a funds transfer.").

46. As a non-customer of SunTrust, Plaintiff is not in privity with SunTrust. She dealt only with her bank, Mt. McKinley Bank, in initiating the subject wire.

47. Therefore, Plaintiff cannot maintain a direct cause of action against SunTrust. *See Welton International Express v. Bank of China (Hong Kong),* No. 19-CV-6834 (JPO), 2020 U.S. Dist. LEXIS 59224, *8-9 (S.D.N.Y. April 3, 2020)

(dismissing claims by non-bank customer against beneficiary bank under Article 4A on grounds of lack of privity); *Frankel-Ross v. Congregation Ohr Hatalmud*, 2016 U.S. Dist. LEXIS 128342, *10 (S.D.N.Y. Sept. 13, 2016) (same).

### iii. **"Sections 4A-105, 1-203, and 3-103" do not state a claim against SunTrust.**

48. In her Response to SunTrust's Motion, Plaintiff attempts to assert new theories under Article 4A for violation of "Sections 4A-105, 1-203, and 3-103" of the U.C.C. Pl. Resp. at 5-6, ECF No. 27.

49. At the outset, it must be noted that Sections 1-203 and 3-103 of the U.C.C. are not part of Article 4A, and thus have no bearing on the rules for handling funds transfers.

50. O.C.G.A. § 11-1-203 is further inapposite because it is merely a restatement of the general principle under the U.C.C. that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." O.C.G.A. § 11-1-203.

51. There is, however, no dispute here that there was no contract between Plaintiff and SunTrust, as Plaintiff is admittedly not a customer. *See* Compl., *passim*.

52. Therefore, there was no duty owed by SunTrust to Plaintiff other than in relation to the subject wire, and that duty was limited to processing the funds per the wiring instructions provided by Plaintiff through her bank.

53. Plaintiff's allegations concede SunTrust met this limited obligation, and no amount of repleading will change this fundamental fact. *See* Compl. *passim.*

54. O.C.G.A. § 11-3-103 appears under Article 3 of Georgia's U.C.C., which governs negotiable instruments; it does not apply to the subject wire transfer, which is governed by Article 4A. *Id.* at § 11-3-103.

55. Finally, Section 4A-105, which at least is part of Article 4A, simply defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." *Id.* at § 11-4A-105.

56. Reference to the general concept of good faith and fair dealing is unnecessary when in fact there are U.C.C. provisions exactly on point that insulate SunTrust from any liability under the circumstances alleged in the Complaint.

### iv. Section 4A-207 does not impose liability.

57. Plaintiff block-quotes Section 4A-207, without any argument, and without even any attempt to link its requirements to the specific transaction in this case. Pl. Resp. at 6.

58. Section 207, entitled "Misdescription of beneficiary," creates a system of rules for a beneficiary bank (here, SunTrust) to follow when receiving a wire with contradictory information identifying the beneficiary [here, its customer]. For example, under subsection (a), when a payment order received by the beneficiary's bank refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the wire order and acceptance of the wire order cannot occur. O.C.G.A. § 11-4A-207(a). When, however, under subsection (b), a payment order received by the beneficiary's bank contains an account number and a name that identify different persons, there are other rules to be followed. *Id.* at § 11-4A-207(b). Subsection (c) contains rules governing the originating bank's (here, Plaintiff's bank, Mt. McKinley Bank) obligations to pay a wire upon acceptance by the beneficiary bank of a payment with discrepancies in identifying information as described in subsection (b). *Id.* at § 11-4A-207(c).

59. Section 11-4A-207 is not applicable to the instant case because Plaintiff does not allege that there was any "misdescription" of the beneficiary, either by name or account number. *See* Compl. & Pl. Resp. *passim*.

60. Specifically, Plaintiff makes no allegations regarding mismatching of any account numbers. More importantly, it is not possible for her to so do given that

17

the funds admittedly went exactly where she intended them to go – i.e., the SunTrust account opened by Espinal and identified in his email to Plaintiff.  Compl. at 1-2.

61. Nor does Plaintiff contend that there was a discrepancy in the name on the account because, as she has already conceded, the fraudster "created a fictitious account in the name of Arbor Capital Management, Inc., the same name of Plaintiff's broker company's name" and that she wired the funds to "fraudulent account created at [SunTrust] in the fictitious name of Arbor Capital Management, Inc." *Id*.

62. Therefore, Plaintiff fails to state a claim against SunTrust under Section 4A-207.

### D. **Plaintiff Cannot Recover Under the Bank Secrecy Act.**

63. Plaintiff's purported B.S.A. claim is easily disposed of as that statute provides no private right of action.

64. "The Currency and Foreign Transactions Reporting Act of 1970 is generally referred to as the [B.S.A.]  The B.S.A.'s purpose is 'to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings [].'" *In re Grand Jury Proceedings*, 707 F.3d 1262, 1266 (11th Cir. 2013) (quoting 31 U.S.C. § 5311) (internal citations omitted).

65. The B.S.A obligates financial institutions to monitor their accounts for suspicious activity indicative of money laundering and other criminal or terrorist activities, but the duty to monitor and report is owed to the government of the United States and not to consumers with whom a bank has no existing relationship.. *E.g. Marlin v. Moody Nat'l Bank, N.A.*, No. H-04-4443, 2006 U.S. Dist. LEXIS 57736, at *18 (S.D. Tex. Aug, 16, 2006); *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 923 (W.D. Mich. 2010) ("it is now well settled that the anti-money-laundering obligations of banks, as established by the [B.S.A.], obligate banks to report certain customer activity to the government but do not create a private cause of action permitting third parties to sue for violations of the statute.") *aff'd* 712 F.3d 917 (6th Cir. 2013).

66. Given the purpose of the B.S.A., courts have repeatedly found that no private right of action exists under that statute. *E.g., In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("[B]ecause the Bank Secrecy Act does not create a private right of action, the Court can perceive no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements."); *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874 (N.D. Iowa 2009) (finding no duty of care under the Banking Secrecy Act owed by bank who had transferred money from corporate account to embezzler's personal account); *Aiken v.*

*Interglobal Mergers and Acquisitions*, No. 05-CV-5503, 2006 U.S. Dist. LEXIS 45730, 2006 WL 1878323, at *2 (S.D.N.Y. Jul. 5, 2006) (finding that the Bank Secrecy Act did not create a private right of action and therefore did not provide a basis for imposing a duty of care upon the defendant).

67. Based on the foregoing authority, Plaintiff cannot state a claim against SunTrust under the B.S.A.

68. For all these reasons, Plaintiff's Complaint fails to state a claim upon which relief can be granted and leave to amend would be futile.

WHEREFORE, SunTrust's Motion to Dismiss the Complaint is hereby **GRANTED and the case is dismissed as to SunTrust WITH PREJUDICE**. SO ORDERED, this ___ day of _____, 2020.

_____
The Honorable William M. Ray, II
United States District Judge
Northern District of Georgia